Let's call our first case, which is 18-2105, United States v. Elliott, and let's proceed with Mr. Arici? How do you pronounce that? Ar-see-see, Your Honor. Ar-see-see, okay. You may proceed. Thank you. Good morning, Your Honors and Counsel. John Ar-see-see, from the Federal Defenders in Maryland, Sam Elliott. Your Honors, the question in this case is, what's the unit of prosecution for possessing child pornography under Section 2252, Cap A? The answer is that it's the act of possession at a single time in a single place. So multiple items that are discovered at the same date and seized from the same location constitute a single offense. A defined place. Is a place at each device a place, or what is a place? The closest analog that we've identified in the briefing, both the government and I, are the firearms. This Court's firearms cases, which follow a pretty similar statutory… Which would bring us to United States v. Hutching. Hutching, Jones, Valentine. So let me tell you just straight on point where I'm concerned about this case. I'm concerned in the sense that I'm not sure which way it goes. In Hutching, we held that the, quote, simultaneous possession of multiple firearms generally constitutes only one offense unless there is evidence that the weapons were stored in different places or acquired at different times. So I asked my clerks, is there any evidence in the record? I want you to go to the record and look for the record to see if the data, which is the source of the pornographic material in this case, is all stored in one device and duplicated in others, or is there evidence that it was in different devices and therefore all of the data is an aggregate, or is there evidence that the data was stored at different times in the same device or in different devices? So I'll let you tell me what the record says. So I think the plea agreement, which is the factual basis for Mr. Elliott's convictions, is silent as to that point. And that's what's fundamental, I think, here, is that all it So let me take that part first, and then I'll speak to the other part of your question. Yeah, but would you say that Hutchings, then, is where we've got... If you say that it's the firearm cases or the closest analog, then are you telling us that it's Hutchings where we should be focusing? Yeah, if you want to focus on Hutchings, I am fine with that because I think we prevail under the Hutchings analysis because of the... Silence? Because of the silence of the record? Because of the silence of the fact of the plea agreement, because of the government's reliance on this per-device theory, and because of Jones, which is a case from this court preceding Hutchings, in which nine firearms were found in one bedroom and constituted a single count of conviction. And so I think Hutchings had three separate physical locations, a bedroom, a car, and a truck. And I fully agree that there's not a fully satisfying line to draw here, but it's important to draw a line somewhere, and that physical differentiation is where the court drew it in Hutchings. And the contraband at issue here is the device containing child pornography. And so that's akin to a firearm. And so having multiple firearms in a bedroom, Jones, little, same factual scenario, is a single count. Having multiple devices of child... I don't want to hog all the time of my colleagues, but it seems to me that if you say that firearms define the place, then firearms being a physical concrete item can be only found in one bedroom, one physical place, or two or three physical places. Data, which is the item here, can't be stored in a bedroom or in a garage. You can't sweep a little data here and a little data there. It's got to be stored somewhere, and without a device, it's really not... I think there's some slippage between how we use the word storage in terms of maintaining electronic information and storage in terms of how we think about physical items. And so I think that we need to think about where... The correct analogy, I think, is where the device containing child pornography is stored, not where that information is stored. Why does that matter? Because that's what the statute contemplates. It contemplates possessing any book, magazine, material containing child pornography. As you point out, it has to be contained somewhere. That's the contraband. Most of these devices don't actually contain pornography. If you broke them open, you wouldn't find little pieces of pornography. They have access to the web where it is being stored, in a cloud storage. Isn't that true? In this case, three of the device... The closest we can... The hard drive might be different. What's that? Yeah, I think in this case we have at least three items that are likely local storage. That is the HP computer, the iPhone, and the hard drive. And then a Dropbox account that is a cloud storage device. It's tough because I agree that there's more nuance to the cloud than is probably manifested in the briefing. The reason for that is because the government didn't rely on the technological differences between the cloud and a local storage matter below. It simply said, that's a different place, a different device. That's how it counts under the statute. So there's not a tremendous amount of either factual or legal development about that. So I would suggest that the court simply follow what the Ninth Circuit did in Chalaka, which is to do what the government did and treat a Dropbox account as simply another device that should be considered under the statute and leave that for another case. Leave that nuance for development in another case. Because on one level, a Dropbox account is like a warehouse. If a gun was stored off in a warehouse somewhere else under hutching, that would be a separate account. But on another level, it's not. In the sense that Mr. Elliot couldn't go to Dropbox. Dropbox was holding information, which it would then make available to him only through the devices that were found in his bedroom. So it's not a perfect analogy. And even if you disagree with me on that point, it doesn't change the fact that at least two accounts are multiplicitous, and that is the other two devices. Did the devices store the same set of images, or did each storage device have different unique images? The plea agreement, I don't think, is clear on that point in the sense that it identifies distinct images, but doesn't make clear that they are distinct from items that may have been duplicated on other devices. But I can see that elsewhere in the record there is evidence that each device contains separate images. And there were hundreds, if not thousands, of images, correct? There were approximately 8,000 images is what the count was, with some acknowledgment that there was duplication, but no one found out how many. Because for guidelines purposes, after you hit 600, it doesn't matter. Right, you maxed out. But I don't think that that matters either, because there's nothing to suggest, there's no proof as to how those were received, or how those were necessarily stored. There is some suggestion that, and again, this is all outside the plea agreement, which I think is the critical factual basis for evaluating this case, but there is other record evidence to suggest that at least the Hewlett Packard computer, the phone, and the Dropbox account were linked, and so whether there's duplication because of a failed backup, or because of a failed drive where things were then partially reinstalled over, we don't know. And the frustrating thing is that it would be very easy for the government to prove this, right, in the sense that digital forensic analysis should be able, as Judge Cicero was pointing out, to discern when individual files were either received or created, and that this evidence could be pointed out, or a plea agreement could simply say that the defendant acknowledges that he possessed this particular drive at a time and place differently than the other devices at issue and the other accounts. That solves the problem, I think. For purposes of your argument, if his house contained, instead of these electronic devices, magazines with pornographic images, and he had a couple hundred magazines, your argument would be the same. It wouldn't matter how many books or magazines were in the home. It'd still be a one-count theory under your view of what the word any means. It would be. It would be the same, and I think it's an important point because the statute contemplates, we have all these problems with digital stuff, and that's where most of these things, these cases arise, right? But the statute criminalizes analog materials, too, and so there are analog cases, and there are fewer and further between in this day and age than exist, and the analysis should be the same, and I think that our approach blends those two worlds together in a way that is more sensible and more consistent with the statute, and I agree. I don't think either the approach that we've advanced or the government has advanced is entirely satisfying one way or the other. I don't think that either us or Congress, frankly, have made your job easy, but I think that our view accords with the statute more frankly, and it has the added benefit of also according with lenity, and I do want to just point out, too, that I think that there is really no reason to read the unit of prosecution in 2252, Cap A, differently than the unit of prosecution in 2252, the governments per device theory under it. Well, I want you and the government to address one aspect of Judge Ebell's question, and that is if the data is stored in a cloud or in a place, electronic place, where various computers have access to the data, let's say a bank where hundreds of terminals can reach that point, let's say the circuit court where we have storage in one place that is discrete from the cloud but stored nevertheless with access in six different states, assuming that one person has access to all those computers, does that mean that each computer is a device and that it would result in hundreds, potentially thousands of devices? I won't speak for the government, but my understanding of their theory is that, yeah, potentially they could charge multiple devices on those theories. I think all these unit of prosecution cases, of course, turn on the facts. The number of units is going to turn on the facts. I think under your hypothetical, if indeed a person has access to multiple devices that store an item of child pornography, then yeah, those are probably separate devices that they would have constructive possession of. But it also becomes a question of, is there a single file that's stored in one location and simply accessed via another device, and that there is no local storage? There may be some nuance there. I can't say 100% one way or the other, but I think the possibility should be frightening because it dramatically expands the unit of prosecution that holds charging power in these cases and simply doesn't balance my time for remodeling. You may. All right, let's hear from the United States, Ms. Rizzoni. Thank you, Your Honor. May it please the court, counsel. Good morning. My name is Jennifer Rizzoni. I'm an AUSA in Albuquerque. Judge Lucero, I'll just start with where I think you wanted to go in this case. But I'll start with the fact that my colleague mentioned that the contraband were the devices that were found. The contraband in this case- What do you mean by where you wanted to go? I frankly haven't made up my mind. So if that's where you think I want to go, that's not a very good place to go. Your Honor, I actually, I didn't think you, you clearly may have said that you are working on making up your mind in this case. So that all being said, I wanted to start with the fact that the contraband in this case is actually the child pornography. It's not the devices that the child pornography is on. And so the way in which the government wants this court to look at these cases is that like a gun case, if a gun or a group of guns are found in a room with walls, similarly, the storage devices containing child pornography would be like that room. Therefore, if you have five devices, each would be like a room. Therefore, five counts under 2252 Cap A. Maybe my colleagues are a little swifter than I, but I'm not sure I understand what you said. If there are five guns in one room, is that five counts or one count? No, that would be one count under Hutching. Similarly, in a child pornography case, child pornography can't be kept in a, well, it could be technically if you had pieces of paper. But in this case, we're talking about media. So media has to be kept within a storage device. And so the government's position here is that each storage device is like the room. The storage device. Correct. So if the data is stored in one common place but accessible by five devices, you only have one count? So that goes to the question that you asked my colleague. And in that way, yes. Speaking about Dropbox, like the cloud storage that you were just speaking about, if a computer, which computers everywhere can access, if it has access to the cloud, it can access Dropbox. The media is stored on Dropbox. If someone were to download that and put it on the computer that's accessing Dropbox, then yes, that would then be another possession because now that piece of media is now on the computer that's accessed Dropbox. So that would be two counts. I'm hoping that answers the question. Well, what does the record tell us about that? What does the record tell us as to where this material is stored? In this case, the record tells us that it was stored on a computer, on a hard drive, on an iPhone, and in the cloud. That's what the record tells us in this particular case. Therefore, there were four counts. Well, that's only two. How do you get four out of that? The cloud is one and the computer with the storage facility is another. Where's the other two? The iPhone. There was an iPhone involved and then there was a hard drive. But do they have discrete, the record shows that there is discrete data in each device? Correct. And that's how we came to four counts of possession. So those are the rooms, essentially, that the government would assert create each count under the statute. That all being said... That's how you distinguish Hutchins then? Correct. That's your workaround for that case? Yes. I mean, I think that's the analogy that you can make with Hutchins. I know that my colleague believes that it also supports his position, but the government's position is that it supports ours in that Judge Kelly created these distinct areas, these distinct acts where the guns were. And therefore, we have the same idea. There are distinct acts when someone has to put an item or a piece of media on a separate storage device. Each of those acts creates the new count of possession. I ask this of Mr. Arcisi, but are there unique or different images on each device? What does the record show about that? I think Mr. Arcisi actually conveyed the record accurately here. But I can tell you that despite the fact, if you have a case where you have the same image that's been duplicated over and over, that person is still going to, for instance, get the increase under the guidelines for having multiple images. So regardless of the fact that it's the same image, the courts have held, and the guidelines show, that there's harm in simply even duplicating the image. So the fact that it might be the same shouldn't really make a difference in this case. So if you have the same image on a magazine, on a newspaper, on photocopies, in the various media that are outlined in the statute, each one of those items is a discrete count? That's what, if they are in a separate, yes, that's what the government's position would be. Well, and then the nuance, what if you have a magazine with child pornography pictures in it, but it's a single magazine and you possess that magazine? Is that one count or is that one count for each page or one count for each picture on each page? So to be consistent, that would, if it's all in one, this is kind of like the binder analogy that my colleague made in his reply brief, that would be one count. But if it's separated out into two binders, then yes, it would be two counts, because the idea is you've got it in two separate storage pieces. So those would be different rooms now, under your theory? Under our theory, that's... Each binder would be a room? Would be a separate storage device. That's the best way we can come up with to describe, when you have media, it's different. It's different. But yes, if you had hard copies of all this stuff, which rarely do we, it's typically on a computer or on a hard drive or somewhere else, that would be the theory. But we already have accumulation of penalties based on the number of pictures. That seems to make sense. There is a correlation. The more pictures, the more women are involved or children are involved, and therefore the more people are harmed. I'm having trouble seeing why Congress would have wanted and why we should interpret extra penalties for two devices that, let's just assume, have the same pictures on them. At the moment, we don't know, but we do know that there are differences on each one, but just for argument. Why would Congress say, we're already giving you accumulation for the number of pictures, if you have one on your cell phone and one on your laptop, why is there a greater injury to victims that would want to enhance that? So in that particular case, Your Honor, I think that Congress's idea was that when a defendant moves his or her cache of child pornography, puts it in multiple places, they have two reasons for doing so. Ease of access, so that they have it in different places, and to make sure that they always have it. So there is more harm, because they're taking another step to preserve this contraband that they want for whatever reason they want it. And so it's important to understand that the act of putting images on multiple devices, whether it's one or a thousand, is an affirmative additional conduct that should be punished. Is the act critical to your analysis? That is, are you, there are cases that seem to tie to discrete acts. If a defendant has four devices, and with one keystroke, could say, put this on all of my devices, would that be a different charge for you than if he had to call up each device and load onto that device? The act of putting them onto four devices, as it is in this case, it's the act. Whether it's one keystroke. It could be a single act that does it. Is that then one offense? But if he's got computers that are not linked, and he has to forward the data to each computer separately, would it be four crimes? And is that a rational approach? Your Honor, I'll point you actually to both Long and to Jones, where this court did look at the act. It's the act of. My point is, are you arguing that we should conduct this under an act analysis, like several of our other circuits have done? We haven't so much, but the Fifth and several other circuits have done that. Is that your argument to us? The argument is that it's separate storage devices. Whether it's one keystroke. So you're not caring, you don't care about the act? Well, I do care about the act, but it's a separate storage device. So whether it takes one keystroke, technologically, to put it onto four devices, you're intending to put it onto four devices. And so under Long and under Jones, proof of separate storage of individual items may establish separate offenses of possession. But there's no allegation here about how many acts this defendant used. We have no knowledge whether one keystroke might have put it on these things or not. So that's why in our arguing for a rule from us that buys into, I think, the Fifth and some of the other circuits about the act being the event, you're saying it is the rules that is the event, e.g. each device. I understand what you're saying, Your Honor. And I'll tell you that the record is silent in terms of what act it took to put it on the floor. And therefore, you can't argue that and win. But I can say that there are four devices and that if nothing else, it should go back and there should be further evidence taken in terms of how... How do you get around the rule of lenity, which analogizes to the other, the abducting women, the man act or other acts that were, it uses similar, any language in the statute. And the courts have said, including the Supreme Court, that there is ambiguity about whether that means one offense or multiple offenses. Why shouldn't we adopt lenity? I mean, we don't know. At least I don't know the answer to this. Because I think that in Long, we said that, yes, any can be ambiguous. But if there is proof of separate receipt or separate storage, then there may be separate offenses of possession. And so this court, I don't disagree that any can be ambiguous. But here we have Long. Here we have evidence of separate storage. Therefore, there can be separate offenses of possession. Let me make sure I understand what you're saying. Let's say you have two perverts. One is very, very wealthy, has high tech, has all the iPhone devices where if you put it on your iPhone, it automatically appears on all your iDevices, etc. The other one is a fairly poor dude. He has little, these old computers and he pulls one out of the closet and puts stuff on that one. And then he goes to another one. And so the first guy stores everything in one device. And one, the cloud or wherever, but it's all in one place or one device to not make the word place ambiguous here. That chap is guilty of one count? Correct. And the poor little pervert who goes around to the various computers and stores the same data, but on different devices, he's guilty of four counts. That's correct. And why shouldn't the rule of lenity apply to such an obviously inequitable and unjust result? Because there has to be a line in the sand somewhere here. We can't look to X as the line in the sand because you tell us there's no evidence of X, right? Well, the fact that these things are on various storage devices gives the court some evidence that there had to be at least one, maybe more, X to put them on the various storage devices, but there's likely more than one. And so there has to be a line in the sand. And sometimes that line is presumably, as my colleague explained, it doesn't work in favor of either side equally. Sometimes it's going to be a lot of counts. Sometimes it's just going to be one. But a rule needs to be made when we're charging these cases. And this court is here to do that. Okay. Thank you. Your Honors, what's the, let's see, there's the Fifth Circuit case plan. I mean, is that the out-of-circuit case that the government puts most of its reliance on, or are there other cases that you'd advocate? It does, Your Honor. The Fifth Circuit and the Eighth Circuit, although under a plain or standard, have both found that multiple charges can come out of various storage devices that are found. Additionally, Your Honor, I would point out that the cases that have addressed 2252, the original statute, have all found that the one or more and the any are not similar. So the First, Second, Ninth, and again the Eighth Circuit all found that they are not similar. So all of those cases work together to support the position that the government is asserting today. And again, I would point you to Long in terms of its analysis under the possession of male, sole and male statute. That all being said, Your Honors, I have about 30 seconds. And so based on the law and our brief and our argument today, we would ask you to defer to the district court, finding that the proper unit of prosecution is the device upon which the child pornography is found. Thank you, Counsel. So we have some rebuttal time for Mr. RCC. I just have three brief points in rebuttal, Your Honor. The first is that devices alone are simply not a coherent theory for the unit of prosecution. And they are not per se proof standing alone of separate receipts or separate storage, as that term is used throughout the brief analogized. Well, we don't have receipt charged here. It's just possession. It's just possession. And again, one thing that I think should allay any concerns that the court may have is that the government can always also prove receipt in these cases. It's concerned about having its hands tied by our theory with respect to possession, then charge separate receipts. And possession is a lesser included offense, of course. Would you agree that there would be multiple charges of receipt here if they had charged that? If they had the evidence for it. Well, the evidence would be only that the defendant, not anybody else, the defendant got everything, received everything in one device, and then split them up and put them on different devices. I think you need proof of receipt at separate times and places. From outside people. What's that? From outside sources. From outside sources. So the device alone wouldn't be sufficient to support a receipt count. We don't know what the receipt piece would look like in this case. So in a future case, they certainly very well could. And I just do want to say briefly, the remedy here is to vacate the multiplicitous convictions. It's not a remand for further findings. The government, in future cases, can certainly seek to reduce those, either by evidence or admissions. It's the amount of time that I would simply ask for a remand. Thank you, counsel. Counsel are excused, and the case shall be submitted.